H. D. BONNET V. GALVESTON, HARRISBURG & SAN ANTONIO
RAILWAY COMPANY.

No. 349.—Decided December 23, 1895.

### 1. Negligence of Employer.

In an action by plaintiff for damages from death of his son by alleged negligence of the railway company, in whose employ the deceased was killed, the physical weakness of a fellow-servant engaged in the work is no ground for recovery for negligence in employing him when such weakness was known to the injured servant, or when the injury complained of did not arise from such infirmity of the fellow-servant. (P. 75.)

### 2. Rules as to Risks Assumed by Servant—Dangerous Manner of Conducting Business—Servant's Knowledge.

The servant assumes the risks ordinarily incident to his employment. The master has the right to conduct his business in his own way and the servant cannot recover for injuries resulting from the unusually dangerous manner in which the business is carried on if he knew of the danger in time to quit the employment before incurring it. But, in the absence of such knowledge, a servant has a right to assume that the master knows his business and will conduct it in a reasonably safe and prudent manner. If the master warn him, or the danger be obvious, or the servant learns it before entering on performance, he assumes the risk; and so if servant and master stand on an equal footing with respect to knowledge. But it is negligence for the master to subject the servant to a risk not ordinarily incident to his employment unless the extraordinary hazard be obvious to the servant or he be in some manner apprised of it. (Pp. 75, 76.)

### 3. Same—Negligence—Question for Jury.

The employe, while engaged with others in carrying an iron guard-rail upon a railroad bridge, fell from the bridge by reason of one with whom he was working stumbling and causing the weight of the rail to fall upon him, and was killed. The testimony showed that the deceased had never worked at the business before; that there were other and safer means of carrying the guard-rails; the work was attended by some risks; the deceased was not warned in entering the work that he would encounter any extraordinary hazard: Held, that the questions of negligence of the railway company, and of the assumption of the risk by the deceased,

should have been submitted to the jury, in a suit for damages by a parent for the death of his son, the employe. (P. 76.)

**4. Damages by Death—Evidence.**

In suit by a father for damages for negligently causing the death of his son aged 21½ years, in employ of railway company, it was not error to exclude testimony as to the father's receipts from his son's wages before his majority. It does not tend to show what the son would have given his father after reaching 21 years of age when his earnings became his own. (Pp. 76, 77.)

**5. Same—Remote Damages.**

In such action for damages it was incompetent, after proving that the son was preparing himself to become a machinist and engineer, to show the wages machinists and engineers ordinarily received. The probability of his becoming an engineer was too remote. (P. 77.)

ERROR to Court of Civil Appeals for Fourth District, in an appeal from Val Verde County.

The suit was brought by Bonnet to recover damages from the railway company for the death of his son while in their employ. Upon the evidence disclosed in the opinion the trial court directed a verdict for the defendant, and on plaintiff's appeal the judgment was affirmed by the Court of Civil Appeals, whereupon plaintiff obtained writ of error.

*Joseph Jones* and *Carter, Berry & Culberson*, for plaintiff in error.— The court erred in directing a verdict for the defendant because the evidence showed that the death of plaintiff's son was caused by the negligence of the defendant without fault on his part, and that plaintiff was damaged thereby. Plaintiff was damaged by the death of his son, and the evidence clearly raised three distinct issues of negligence on the part of the defendant as the cause of the accident, which, together with the question of contributory negligence, should have been submitted to the jury. Railway v. Daniels, 28 S. W. Rep., 548; Railway v. Gasscamp, 69 Texas, 545; Railway v. McClain, 80 Texas, 85; Brown, Rec'r, v. Griffin, 71 Texas, 654; Railway v. Mares, 123 U. S., 710; Gardner v. Railway, 150 U. S., 349; Railway v. Eckford, 71 Texas, 274; Railway v. Scott, 71 Texas, 703; Railway v. Mussette, 86 Texas, 708; Railway v. Hinzie, 82 Texas, 623; Railway v. Kuehn, 70 Texas, 582; Stephens v. Railway, 9 S. W. Rep., 589; 16 Am. & Eng. Encycl. Law, 440, sec. 7 and notes; 2 Thompson on Neg., 974, 975, sec. 5; Bailey on Master and Servant, 36, note 3; Buswell on Personal Injuries, sec. 207; Thompson, Admr., v. Railway, 14 Fed. Rep., 564; 2 Thompson on Neg., 1100, sec. 12.

*Baker, Botts, Baker & Lovett* and *Clark & Fuller*, for defendant in error.—The proof showed that neither of the alleged acts of negligence set out in the petition was the proximate cause of the injury, and the petition failed to show causal connection between said injury and said acts. Seale v. Railway, 65 Texas, 274; Brandon v. Manfg. Co., 51 Texas, 121; 3 Willson's C. C., 371; Railway v. Reeves, 10 Wall. (U. S.), 176; Scheffer v. Railway, 105 U. S., 249; Course v. Railway, 2 N. Y. Supp.,

312; Railway v. Nitsche, 45 Am. & Eng. Ry. Cases, 532; 16 Am. & Eng. Enc. of Law, 428, and notes, 436, and notes; Bishop on Non-Contract Law, secs. 41-43; Parker v. Union Woolen Co., 42 Conn., 399; Cooley on Torts, sec. 69; McClary v. Railway, 3 Neb., 44.

The appellant's proof raised a suspicion of contributory negligence upon the part of Herman Bonnet, thereby putting upon appellant the burden of clearing such suspicion, which he failed to do. The undisputed evidence showed that Herman Bonnet was guilty of such contributory negligence as to preclude a recovery. Railway v. Hart, 63 Texas, 59; Railway v. Spicker, 61 Texas, 427; Railway v. Crowder, 63 Texas, 503; Railway v. Foreman, 73 Texas, 311; Railway v. Hester, 72 Texas, 40;. Railway v. O'Hare, 64 Texas, 603; Railway v. Crenshaw, 71 Texas, 345; Railway v. Beeman, 74 Texas, 293; Railway v. Schwabbe, 1 Texas Civil App., 573.

Herman Bonnet, having equal knowledge with the master (Gorvin) of the danger attending the work of carrying the rail, assumed the consequences of the risk in going on with the work, and his father cannot recover. Railway v. French, 86 Texas, 96; Railway v. Somers, 71 Texas,. 700; Railway v. Brentford, 79 Texas, 619; Railway v. Arias, 30 S. W. Rep., 446; Railway v. Harris, 2 Texas Civ. App., 541; Johnson v. Railway, 30 S. W. Rep., 95; Railway v. Strycharski, 6 Texas Civ. App., 555; Railway v. Williams, 72 Texas, 159; Railway v. Tarver, 72 Texas, 309;. Railway v. Echols, 27 S. W. Rep., 60; Eddy v. Rogers, 27 S. W. Rep.,. 295; Railway v. Bryant, 27 S. W. Rep., 826.

Employe assumes a capacity for the service he undertakes and the requisite ability to perform it. Railway v. Hester, 72 Texas, 40; Railway v. Watts, 63 Texas, 549.

GAINES, CHIEF JUSTICE.—This suit was brought by the plaintiff in error to recover of the defendant company damages for the death of his son, which was alleged to have been caused by the negligence of the company. The trial court having instructed a verdict for the defendant and rendered judgment accordingly, the plaintiff appealed to the Court of Civil Appeals, where the judgment was affirmed. It is here complained, that the trial court erred in not submitting the case tô the determination of the jury.

We will state so much of the facts testified to upon the trial as we deem necessary to a decision of the question. The deceased at the time of his death was in the twenty-second year of his age and had been in the employment of the defendant company as one of its bridge gang about three weeks. On the day of the accident he was put to work upon a bridge, in removing some guard rails, and was under the control of a "scratch boss," who was present directing the manner of executing the work. The bridge was about sixty feet above the bottom of the channel at its lowest part, and he fell about eighteen feet. A witness testified, in effect, that the place of the accident was about seventy feet from the end of the bridge. The deceased and three others were directed to

remove the guard rails. The four had raised the rail and started to carry it off, when one McNutt, who, with the deceased, supported the rear end, stepped in an open space between the ties, which had been left by the removal of a space block, and threw the entire weight of that end upon the deceased. The latter was thereby thrown down and off the bridge, and was instantly killed. There was testimony tending to show that deceased had never worked at that particular kind of work before the day of the accident; that when he lost his life he had only been employed on that bridge about an hour; and that he had up to the time assisted in removing only one rail. There was some conflict upon these points. Witnesses testified that the guard rails were of iron, about twenty feet long, and weighed about four hundred pounds. There was testimony also to that fact that the safe mode of removing such rails and that commonly adopted by railroad companies was, first, to place the rail upon a "push car," and then to move it off the bridge. There was also testimony that, in order to do the work by hand with safety, at least six and even eight men would be required. Upon these points also there was conflicting evidence.

McNutt, whose fall caused the accident, testified that he was in feeble health and strength; and it was shown that he had chronic bronchitis, and that he had lost his voice. A physician testified that, by reason of his infirmity, McNutt was liable in an emergency to lose his breath and consequently his power to support a burden.

The negligence of the company was alleged to consist in directing the removal of the rails in a dangerous manner and with an insufficient number of men, and in employing McNutt.

We think the question of McNutt's incompetency may be laid out of the case. He and the deceased had been working together about three weeks; and it would seem that if his fellow servant's infirmities rendered him unfit for the work, the deceased knew the fact. But, whether incompetent or not by reason of a want of strength, we think the evidence conclusively shows that his unfitness in that respect in no degree contributed to the accident. When he made a false step, his foot going into the space between the ties, it was impossible for him to have averted the calamity, whatever his strength may have been. There was no sufficient evidence to warrant the jury in finding that the death was in any manner attributable to McNutt's alleged unfitness.

That the servant assumes the risks ordinarily incident to his employment is elementary law. It may also be conceded that the master has the right to conduct his business in his own way, and that his servant can not recover for injuries resulting from the unusually dangerous manner in which the business is carried on, provided he knows of the danger in time to quit the employment before incurring it. But the servant, in the absence of such knowledge, has the right to assume that the master knows his business, and that he will conduct it in a reasonably safe and prudent manner. If the master warn him, or if the danger be obvious to an inexperienced man, or if it be not obvious, and,

being experienced, the servant become aware, before he enters upon its performance, that the master's work is carried on in a dangerous manner, he assumes the risks incident to the business as actually conducted. If the master and servant stand upon an equal footing with respect to a knowledge of the danger then, in case of an accident as a result of the danger, the master is exonerated. The servant owes no duty of inspection. He assumes the risks of a danger of which he has actual knowledge, and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would use in the particular employment. Since, in the absence of knowledge to the contrary, he may rely upon the assumption that the master will do his duty, he is under no obligation to look out for the master's negligence; but he can not shut his eyes to dangers that are obvious to an ordinary man, or to an experienced man if he be experienced. In Railway v. Bradford, 66 Texas, 732, the plaintiff was experienced in the work which he undertook to perform, and, though directed to do it with unsafe appliances, it was held that he could not recover. He was equally as competent as his superior to know the character and extent of the danger. To sum up: It is negligent for the master to subject his servant to a risk not ordinarily incident to the employment, unless the extraordinary hazard be obvious to the servant, or he in some manner be apprised of it. Davidson v. Cornell, 132 N. Y., 228; Gill v. Homrighausen, 79 Wis., 634.

Let us apply these principles to the case before us. That the deceased knew that the work he was called upon to perform was dangerous is not to be denied. Any work upon a bridge of the character of that shown by the evidence was attended with some risks, but it can not be controverted that the rails might have been removed in a reasonably safe manner. Such dangers as can not reasonably be avoided should be deemed ordinary dangers. He was not warned that in entering upon the work he would encounter an extraordinary hazard. Can it be said, as a matter of law, that an inexperienced man, relying upon the assumption that the master knows his duty to his employes and would perform it, would have known that the manner of doing the work was not a reasonably safe one, and especially in a case where the vice principal of the master is present directing the mode? We think not. Did he acquire while in the company's service, and especially during the day of the accident, such experience, such knowledge, as apprised him of the danger he encountered in continuing the work and of the extent of the hazard? This in our opinion was a question for the jury. We think the questions of the negligence of the company and of the assumption of the risk by the deceased, or of his contributory negligence, if such it may be called, should have been submitted to the jury under appropriate instructions, and that for the error in not doing so the judgment should be reversed.

The plaintiff was entitled to all of his son's earnings during the latter's minority. Hence the court did not err in excluding testimony as to the father's receipts from his son's wages before the son arrived

at the age of twenty-one years. It did not tend to prove what the son would have given him after his earnings became his own, to be disposed of at his will.

Although it had been testified that the deceased, just before his death, was preparing himself to become a machinist and engineer, the court did not err in excluding evidence as to the wages that machinists and engineers ordinarily received for their services. The probability of his becoming an engineer or machinist was too remote, contingent, and speculative to throw any light upon his probable future earnings. It was calculated to mislead rather than to aid the jury in determining the question of damages.

The judgment of the Court of Civil Appeals and that of the District Court are reversed.

*Reversed and remanded.*