VAN GEEM v. CISCO OIL MILL.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 23, 1912. Rehearing Denied Jan. 25, 1913.)

1. TRIAL (§ 244*)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS.

In a personal injury action by a servant, who testified that it was not his duty to examine the machinery which caused the injury, a special charge that plaintiff could not recover if the defect was one which he was bound to discover or repair was improper, as unduly emphasizing the defenses of assumption of risk and contributory negligence, submitted in the

general charge, since plaintiff did not assume risks incident to defects in the machinery, unless he knew of them or in the proper discharge of his duties must necessarily have acquired that knowledge, and it appeared that it was not a part of his duty to inspect the machinery.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–481; Dec. Dig. § 244.*]

**2. TRIAL (§ 237*)—INSTRUCTIONS.**

In a personal injury action, an instruction that it devolves upon plaintiff to sustain material allegations in his petition by preponderance of the evidence, and, unless it is found that he has "established" the material allegations in the petition, verdict should be for defendant, is improper in the use of the word "established."

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 542, 548–551; Dec. Dig. § 237.*]

**3. APPEAL AND ERROR (§ 216*)—OBJECTIONS BELOW—IMPROPER INSTRUCTION.**

An unsuccessful plaintiff in a personal injury action cannot complain of an instruction which failed to submit grounds of negligence where he did not request an instruction submitting those omitted.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216.*]

**4. MASTER AND SERVANT (§ 293*)—INJURIES TO SERVANT—INSTRUCTIONS.**

In a personal injury action by a servant, a charge that the degree of care which should be used by the master in procuring reasonably safe machinery and appliances is to be considered with the risk to be incurred does not furnish the proper guide to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1161; Dec. Dig. § 293.*]

**5. TRIAL (§ 253*)—INJURIES TO SERVANT—INSTRUCTIONS.**

In a personal injury action by servant, an instruction that a servant assumes the ordinary risks of the operation of machinery and his employment, but not risks caused by negligence of the master, unless he knew of them or in the ordinary discharge of his duty must necessarily have acquired knowledge thereof, is not improper as ignoring the issue of the servant's ignorance of dangers incident to his employment, and the negligence of the master in failing to warn him.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

**6. MASTER AND SERVANT (§ 296*)—INJURIES TO SERVANT—ACTIONS—QUESTIONS FOR JURY.**

In a personal injury action by servant, testimony that immediately after the accident he said that the lever broke, and he got his hand into the saws, and that he should have known better, is sufficient to warrant a submission of the issue of contributory negligence to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

**7. APPEAL AND ERROR (§ 216*)—OBJECTION BELOW — NECESSITY OF REQUESTING INSTRUCTIONS.**

The failure of the court to submit issues of negligence alleged in plaintiff's petition cannot be complained of, in the absence of request for their submission.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216.*]

**8. MASTER AND SERVANT (§ 267*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE.**

In a personal injury action by a servant who worked in a ginhouse, testimony by a witness that the master's ginhouse was the best

constructed building of the kind he had ever seen was irrelevant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 909, 911; Dec. Dig. § 267.*]

**9. MASTER AND SERVANT (§ 274*)—INJURIES TO SERVANT—EVIDENCE.**

In a personal injury action by a servant, who denied that he ever received instructions that, if anything got out of order, to fix it, testimony by the master's vice principal that he always instructed the employés to fix anything that was out of order is admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 939–949; Dec. Dig. § 274.*]

### On Motion for Rehearing.

**10. MASTER AND SERVANT (§ 296*)—INJURIES TO SERVANT—ACTIONS—INSTRUCTIONS.**

In a personal injury action by a servant in a ginhouse, testimony by the superintendent that he always instructed employés to report anything that got out of order, though he could not say that he instructed plaintiff to do so, will not warrant an instruction submitting the issue to the jury, whether it was plaintiff's duty to inspect the defective appliance which caused the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

**11. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR.**

In an action by a servant for personal injuries received in a cotton gin, the improper admission of testimony that the defendant's gin was the best constructed building of the kind a witness had ever seen was harmless, where it appeared from plaintiff's own testimony that prior to the accident he was familiar with its construction and with the vibrations which he claimed constituted a contributing cause of the accident.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

Appeal from Eastland County Court; E. A. Hill, Judge.

Action by Charles M. Van Geem against the Cisco Oil Mill. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Earl Conner, of Eastland, for appellant. Cunningham & Oliver, of Abilene, for appellee.

DUNKLIN, J. Charles Van Geem, while engaged as an employé of the Cisco Oil Mill, a private corporation, in the operation of a cotton gin, sustained an injury to his hand as the result of that member coming in contact with the saws of a gin while running. He sued the gin company for damages for the injury, and from a judgment in defendant's favor plaintiff has appealed.

According to his testimony upon the trial, at the time of his injury he was engaged in cleaning out one of the gin stands after the ginning for the day had terminated. In order to do this, he signaled the engineer to start the machinery. When that was done, he raised the breast of one of the gin stands, and started to place a block thereunder to hold it up, when the lever with which the

gin was provided for raising the breast and which was in a defective condition broke, and knocked his hand against the saws, thus causing his injury. In his petition he alleged that the house in which the gin stands and machinery were installed was constructed in such a manner as to cause excessive vibrations of the machinery and gins while in operation; that the gin and lever with which he was working at the time of his injury were out of repair and in a defective condition; that the portion of the building where he was working was improperly lighted; that by reason of his inexperience in the operation of gins he was ignorant of the dangers of that service and that defendant failed to warn him of such dangers. He alleged that defendant was guilty of negligence which was the proximate cause of his injury in constructing the building in the manner indicated in furnishing the gin in the condition mentioned, and without sufficient lights, and in failing to warn him of the dangers of the service he was performing at the time of his injury.

[1] In the court's main charge to the jury, the defenses of assumed risks and plaintiff's contributory negligence were submitted in general terms. In addition to those instructions, the court gave this further special instruction requested by defendant: "You are instructed that before you can find for the plaintiff on account of any defect in the machinery of the defendant with which or at which the defendant (plaintiff) was working, or on account of same being out of repair, you must first find from the evidence that there was a defect in said machinery, or that the same was out of repair at the time of the accident, and you must further find from the evidence that said defect or lack of repair of said machinery, if you believe there was any, was the proximate cause of plaintiff's injuries; and you are further charged in this connection that if you believe from the evidence that said defect or lack of repair (if you first find there was any which contributed to plaintiff's injuries) was one of which plaintiff knew prior to said accident, or one of which it was his duty to know, or one of which, by the use of ordinary care he could have known, and one which it was his duty to repair, and one which he negligently failed to repair or negligently failed to discover and repair, and was thereby injured, you will find for the defendant." According to plaintiff's testimony, it was not one of the duties of his employment to inspect the gins to discover defects. If it was not his duty to do this, then he did not assume the risks incident to such defects unless he knew of them, or in the proper discharge of the duties of his employment must necessarily have acquired that knowledge, and under such circumstances he owed no legal duty to discover them. Bonnet v. G., H. & S. A. Ry., 89 Tex. 72, 33 S. W. 334; M. K. & T. Ry. v. Hannig, 91

Tex. 347, 43 S. W. 508. The special instruction in addition to the instructions already given in the main charge upon the defenses of assumed risks and contributory negligence unduly emphasized those defenses, and probably impressed the jury with the belief that they were authorized to find that it was plaintiff's duty under the law to inspect for such defects, even though it was not one of the duties of his employment so to do. Hence, the assignment of error addressed to this instruction is sustained.

[2] The following charge was given: "It devolves upon the plaintiff in a civil action to sustain the material allegations in his petition contained by a preponderance of the evidence, and, unless you find that the plaintiff has established the material allegations in the petition, you will find for the defendant." The use of the word "established" is criticised as imposing upon the plaintiff an improper burden, under the rule announced in the decision of I. & G. N. Ry. Co. v. Duncan, 55 Tex. Civ. App. 440, 121 S. W. 367. In view of the connection in which the term is used, it is not likely that the jury understood that the burden was upon the plaintiff to do more than to make out his case by a preponderance of the evidence, but upon another trial we would suggest that the charge be so framed as to be free of this criticism.

What we have said in reference to that instruction applies also to the instructions given in submitting plaintiff's case, complaint of which is made in the first assignment of error.

[3] The instruction last referred to is further criticised as limiting plaintiff's right of recovery for defendant's negligence in failing to furnish a reasonably safe place for plaintiff to work and reasonably safe machinery and appliances with which to work. These criticisms are untenable. The instruction was favorable to the plaintiff, and, if there was any error in failing to submit other grounds of negligence as a basis for a recovery, these were errors of omission only of which appellant cannot complain in the absence of a requested instruction presenting the same.

[4] In his charge the court defined negligence and ordinary care, and instructed the jury that it was the duty of the defendant to "use ordinary care and due diligence to furnish suitable machinery and appliances and to use diligence in keeping the same in repair." The charge contained this further instruction: "You are also instructed that the degree of care which should be used by the defendant in the procuring of reasonably safe machinery and appliances is to be considered with reference to the risk to be incurred and must be reasonably proportioned to such risk." It is unnecessary for us to determine whether or not the giving of this instruction would constitute reversible error, but, as the case is to be reversed on other

grounds, we suggest that upon another trial the instruction last quoted be omitted. G., H. & S. A. Ry. Co. v. Gormley, 91 Tex. 393, 43 S. W. 877, 66 Am. St. Rep. 894.

[5] Another instruction given reads: "You are further instructed that a servant assumes the ordinary risk incident to the operation of machinery, and in this case you are charged that, while the plaintiff assumed the ordinary risk incident to his employment, he assumed no risk caused by the negligence of the defendant, if any is proved, unless he knew of such risk or in the ordinary discharge of his duty must necessarily have acquired knowledge thereof." Contrary to numerous criticisms made, we think there was no error in giving this charge. One of the criticisms is that it ignored the issue of plaintiff's ignorance of the dangers incident to his employment, and alleged negligence of the defendant in failing to warn him of those dangers. The strength of the plaintiff's entire case rests upon the charge of negligence, and by the instruction given the jury were told that plaintiff did not assume the risk of any negligence of the defendant unless he knew of the same and of the risk incident thereto.

[6] Appellant insists that there was no evidence to warrant the submission of the issue of plaintiff's contributory negligence. The witness Davenport testified that immediately after plaintiff's injury, and in answer to the question by the witness what caused the injury to plaintiff's hand, plaintiff replied, "That damn lever broke, and I got my hand into the saws while I was trying to put the block under the breast." Witness further testified that plaintiff "said he got it split open in them saws up there. He said he should have known better." The majority of the court are of the opinion that this evidence is sufficient to warrant the submission of the issue of contributory negligence.

[7] The failure of the court to submit issues of negligence alleged in plaintiff's petition other than those embraced in the charge if error at all were errors of omission only, of which appellant cannot complain, in the absence of a request by plaintiff for the submission of the same.

[8] There was error in permitting the witness W. N. Ousley to testify that in his opinion the defendant's ginhouse was the best constructed building of the kind that he ever saw, as the construction of other particular buildings was irrelevant to any issue in the case. Haynes v. Plano Mfg. Co., 36 Tex. Civ. App. 567, 82 S. W. 532.

[9] The testimony of the witness R. L. Davenport, in effect, that it was his custom which he always followed to instruct all the defendant's employés that, if anything got out of order to fix it, was properly admitted as the same tended to show that he gave such instruction to the plaintiff, contrary to the testimony of the plaintiff denying that he had ever received such instructions. I. & G. N. Ry. Co. v. Kuehn, 2 Tex. Civ. App. 210, 21 S. W. 62.

For the errors indicated, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

In view of the earnestness with which appellee insists that we erred in our conclusion reached that the judgment of the trial court should be reversed, we deem it proper to specify more particularly our reasons for condemning the special instruction given at appellee's instance and copied in our original opinion.

[10] R. L. Davenport superintendent of appellee's gin plant, testified: "In the latter part of the fall, the machinery always gets more or less run down, and that fall I got Mr. Ousley to repair the machinery, and put it in good condition. I think the first time C. M. Van Geem worked was the time that Mr. Nobles took a lay-off for two or three days, as has already been stated. He worked around the gin most all fall, helping to do anything that was to be done about the gin. I think that was the second season that he had been doing general work around the gin. The first time he run the gin stands those three days. It was just like he said. Nobles wanted to get a lay-off, and he said that he thought Charley could run the stands, and I asked Charley if he wanted to try it, and he said he would like to have the job if he could run it. Then, after Nobles came back and the rush of the season was over, I cut the crew down. I had been using three men upstairs, but, when I cut the crew down, the ginner would have to help tie out. Jess had not been helping do this like he promised, and I told him he would have to do this or quit, and he said he would quit. I then sent for Charley to come and run the stands. There were four or five bales of cotton on the yard when Charley came up. Sin Hunt had been running the engine and he had quit. I took charge of the engine myself and told Charley to go and oil up and run the stands. We ginned about 10 bales of cotton that day and 10 or 12 the next. Charley worked about three or four weeks this time. About four weeks, I guess. Mr. Ousley helped him awhile. I always tried to get experienced hands at the beginning of the season, but the season was about over, and I thought that Charley would be able to run the rest of the season as there was not much to do. I would not have used him during the rush of the season, if I could have gotten an experienced man. From my knowledge of what Charley (meaning appellant) knew about gin machinery, I certainly did think he was competent to run the stands, especially while there was not much cotton to gin. He said he thought he could run them. I had promised the job to Charley, and told Mr. Ousley so, and I employed Mr. Ousley to put things

in good order. I don't remember just how long he worked before the accident occurred. It occurred some time about the 30th day of December, 1910 * * * I don't remember that I gave him any instructions when he commenced work. I could not be sure; but I always instructed all my hands to report anything that got out of order. * * * I can't say that I instructed Charley myself, but I always instructed my employés or had some one who is competent to do so. I instructed him that if anything got out of order that he could not fix for him to report it to me. It was the duty of the ginner to keep everything in repair or report whatever got out of order. Yes, sir; I mean that is the duty of an experienced ginner."

We have found no evidence in the record tending to show that the worn condition of the lever which caused it to break, if such was the cause, was patent and open to common observation of a person engaged as appellant in operating the gin.

We do not think that the testimony of R. L. Davenport was sufficient to warrant the court to submit, as was done in the special instruction quoted in our original opinion, the issue whether or not it was appellant's duty to inspect the lever and other appliances prior to the accident to determine whether or not it was in a condition reasonably safe for use, nor was there any other testimony sufficient to warrant a finding on appellee's favor upon that issue.

[11] The error in admitting the testimony of the witness Ousley that appellee's gin was the best constructed building of the kind that he ever saw was harmless, and would not cause a reversal of the judgment, as it appears from appellant's own testimony that prior to the accident he was familiar with the manner of its construction and of the vibrations which he claims constituted a contributing cause of the accident. We have pointed out that error for the future guidance of the trial court in the event appellant upon any theory shows himself entitled to recover for the alleged negligence of appellee, if any in the construction of the building.

The motion is overruled.