### MISSOURI, K. & T. RY. CO. OF TEXAS v. SCOTT.

(Court of Civil Appeals of Texas. Amarillo. Nov. 1, 1913. Rehearing Denied Nov. 15, 1913.)

1. MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—QUESTIONS FOR JURY—ASSUMPTION OF RISK.

Where the foreman of a section gang negligently ordered an insufficient number of men to move a switch tie, and furnished them with improper tools with which to do the work, it could not be said, as a matter of law that one of the men, who was experienced in handling ordinary ties, but not switch ties, which were heavier, and who was injured while moving the tie, as a result of the foreman's negligence, assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

2. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—BURDEN OF PROOF—ASSUMPTION OF RISK.

In such an action, after it appeared that the injuries resulted from the negligence of the foreman, it was incumbent upon the railroad company to show that the servant assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

3. APPEAL AND ERROR (§ 1002*)—REVIEW—VERDICT—CONFLICTING EVIDENCE.

Where the testimony is conflicting, and the jury might infer that the danger was not obvious to the injured servant, the question of assumption of risk is for the jury, and their verdict will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

4. MASTER AND SERVANT (§ 163*)—INJURIES TO SERVANT—DUTIES OF MASTER—ADEQUATE NUMBER OF MEN.

The duty of an employer to furnish a sufficient number of employés to perform the required service applies to the assignment of an adequate number of men to each particular piece of work undertaken.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 328–330; Dec. Dig. § 163.*]

5. MASTER AND SERVANT (§ 204*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—STATUTE.

Under federal Employers' Liability Act June 11, 1906, c. 3073, § 4, 34 Stat. 232 (U. S. Comp. St. Supp. 1911, p. 1317), as amended by act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1323), providing that employés engaged in interstate commerce do not assume the risk of injury from the violation of that act, the law of assumed risk applies to actions for injuries to such employés which were not caused by the violation of the act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

Appeal from District Court, Cooke County; Robert H. Hopkins, Judge.

Action by Charles Scott against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

Garnett & Garnett, of Gainesville, and Alex. S. Coke and A. H. McKnight, both of Dallas, for appellant. Stuart, Bell & Moore, of Gainesville, for appellee.

HUFF, C. J. Appellee, Scott, in his petition, alleged that: On the 2d day of January, 1912, he was in the employment of appellant railway company as a section hand, and as such engaged with five other men in laying switch ties in the town of Gainesville, all working under the direction of a foreman, and, with three other hands, appellee was directed by his foreman to move one of the switch ties. That the tie was 18 feet long, 8 inches thick, and about 14 inches wide, weighing about 800 or 1,000 pounds, thoroughly soaked in creosote, slick, and greasy. That he and the other men were directed to carry the tie by the foreman, by the use of spike maul handles, round, smooth, and slick, about 3 feet long and one and one-half inch in diameter, being placed under the tie near each end, one of said men getting at the ends of each handle, thus raising and carrying the tie. Appellee and the three men proceeded to lift the tie, but the man opposite appellee raised it with a jerk, or faster than appellee raised or could raise his side, and on account of the heavy weight, and on account of its being slick and greasy and the handles being round and smooth, the weight of the tie was thrown on appellee, which slipped near his hand, thereby seriously and permanently injuring appellee—setting out the injury to his abdomen, hip, back, kidneys, and other injuries not necessary to describe. The negligence alleged was in not furnishing and using at least six or eight men to so handle the tie, and in furnishing the spike maul handles in carrying the tie, for that the ties were greasy and slick and would easily slide, thus throwing the weight on the man whose side should happen to be the lowest, and that appellant was negligent in not furnishing hooks or clamps to carry said ties; that each and all of said acts of negligence, together with the negligence of the hand opposite appellee in jerking and lifting the tie, were the proximate cause of the injury. The answer was a general denial, and that appellant was engaged in interstate commerce business, and that appellee was employed by

---

appellant to assist therein, and, if injured, it was not from any failure of appellant to comply with the act of Congress as to safety appliances, and that appellant assumed all ordinary risk incident to the work, as well as to the manner and means by which it was being then accomplished, which work was in furtherance of interstate commerce, and also set up contributory negligence on the part of appellee. There was a verdict and judgment for appellee for the sum of $1,000.

Appellant presents three assignments of error, two of which are to the action of the court in refusing to instruct a verdict for appellant, and one in overruling a motion for new trial, and under each of which the proposition is presented that from the uncontraverted evidence appellee assumed the risk, and hence no recovery could be had against appellant.

[1] It will therefore be seen no complaint is made of the instructions given by the trial court to the jury, or that the evidence failed to establish negligence on the part of appellant. The jury having found for appellee, presumably under a proper charge on assumed risk, the only question for our consideration is: Is there testimony supporting the finding that appellee did not assume the risk? Or, can we, as a matter of law, say from the evidence he did assume the risk? The verdict of the jury establishes that the appellant was negligent in not furnishing enough men to handle the tie which appellee alleges he was assisting to lift at the time he was hurt; that four men were not enough to handle it, and that there should have been at least six or eight men, and that such negligence proximately caused appellee's injuries. It further establishes that the spike maul handles were not suitable nor safe for handling switch ties, and that appellant was negligent in so furnishing the instrumentalities for handling the switch ties, which negligence of appellant proximately caused appellee's injury. We think the verdict further established that the switch tie was 18 feet long, 8 inches thick, and 14 inches wide, and weighed from 800 to 1,000 pounds; that the foreman, Robinson, in charge of the sectionmen at the time, directed four men to move the same when he in fact had six men present, and that it was being moved under his immediate direction and supervision. Appellee at the time did not know its weight, or the danger in moving it at the time he was directed to do so, and did not know that four men could not do so in safety, but that he relied upon the foreman's direction, and he did not know that it would be dangerous to use the spike handles to do so, and that it was not a safe instrumentality to move this particular tie. The verdict establishes that at least six or eight men should have been used in carrying the tie, and that hooks with handles would be a safer instrumentality for handling ties of the size of the one by which the appel-

lee was hurt. It further establishes that the weight of the tie was thrown upon appellee by the tie slipping onto him, occasioned by the man opposite him raising his end of the spike handle too soon. While the evidence shows that appellee had experience in placing cross-ties on the main track of railroads, it shows that he had but little, if any, experience in placing switch ties, which appears from the evidence in the record in this case, were much larger and heavier than the ordinary track tie. We cannot say from the evidence as a question of law that appellee assumed the risk of appellant's negligence in failing to furnish sufficient men and instrumentalities to handle the tie in question.

[2, 3] When the evidence, as established by the verdict, shows that appellant was negligent in the particulars mentioned, it was then incumbent upon appellant to show that appellee assumed the risk. The testimony is conflicting on this material question, and it was for the jury to settle the conflict. We are unprepared to say that it was then open and obvious to appellee that appellant had failed to furnish sufficient instrumentalities to carry the tie with safety, and that it was then open and obvious to him that appellant was negligent in only directing four men, with the handles described in plaintiff's petition, for that purpose. The witnesses, together with all the facts, were before a jury, whose duty it was to pass upon the testimony, and we believe there are facts from which the jury could reasonably infer that the danger was not then open and obvious to appellee.

"It is negligence for the master to subject his servant to a risk not ordinarily incident to the employment, unless the extraordinary hazard be obvious to the servant, or he in some manner be apprised of it. * * * Can it be said, as a matter of law, that an inexperienced man, relying upon the assumption that the master knows his duty to his employés and would perform it, would have known that the manner of doing the work was not a reasonably safe one, and especially in a case where the vice principal of the master is present directing the mode? We think not. Did he acquire, while in the company's service, and especially during the day of the accident, such experience, such knowledge, as apprised him of the danger he encountered in continuing the work and of the extent of the hazard? This, in our opinion, was a question for the jury." Bonnett v. G., H. & S. A. Ry. Co., 89 Tex. 72, 33 S. W. 334.

[4] The duty rested on appellant to furnish a sufficient number of persons to perform the services required, and that they are sufficient to insure reasonable safety to each of the employés so engaged. This principle applies when the master fails to assign an adequate number of men to each particular piece of work which may be undertaken. Bonn v. G., H. & S. A. Ry. Co.,

82 S. W. 808; Ry. Co. v. Bonn, 44 Tex. Civ. App. 631, 99 S. W. 413. The rules governing cases of this kind are so well settled that further discussion is deemed unnecessary. We think there is evidence at least tending to support the verdict of the jury, which we do not feel warranted in disturbing.

[5] We have disposed of this case, in so far as the law of assumed risk is involved, as we understand it to be before the act of the Legislature of April 24, 1905 (Acts 29th Leg. c. 163), modifying the rule theretofore prevailing in the law of assumed risk, and without discussing the question as to whether appellee was injured while he was employed by a "common carrier, by railroad while engaged in commerce between any of the several states and territories, or between any of the states and territories." The evidence in this case shows that appellant railway is a state corporation, and that its line of road began in Texas, at Denison, and ends at Wichita Falls, Tex., running through the town of Gainesville, Tex., where the injury occurred. Appellee was employed and was engaged in putting in cross-ties on a switch or Y in the town of Gainesville, at the time of the injury. Appellant carried state and interstate shipments over its line of road and the Y appears to have been used in connection with its general business at Gainesville for both state and interstate shipments, when required for use. The injury in this case was not caused by the failure of the appellant to comply with the safety appliance law. So under section 4 of the Employers' Liability Act, as amended April 22, 1908, by Congress, the law of assumed risk would apply if the appellee is found to have been engaged in interstate commerce while engaged in carrying a tie to place in a Y on a state road that frequently transported interstate shipments. Without trying to determine this question, we have disposed of the case as if the law of assumed risk was as it existed before the Legislature of this state defined or qualified it. Anything we could say on this much mooted question of the meaning of "while he is employed" in the service of a carrier, "while engaged" in interstate commerce, would add nothing to the subject.

It perhaps is permissible for us to call attention to the case of Pedersen v. Delaware, L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125. In the above case the injured party was an employé of the railroad, repairing a bridge on the railway line of road which, at the time, was engaged in transporting state and interstate freight. He was a carpenter, and at the time was crossing the track with some bolts for the repair of the bridge, when the railway passenger train of said road struck him. It is there held, by a majority of the judges, that the injured man was engaged in interstate

commerce within the meaning of the act of Congress. So it is urged by appellant the employé carrying cross-ties for a Y is engaged in interstate commerce. Up to this time, we must confess it had never occurred to us that he would be so engaged, but the authority cited may authorize the court to go as far as contended by appellant in this case. At any rate, in so far as we are concerned, we leave the question open, and will not discuss it further.

For the reasons above set forth, the judgment of the trial court is affirmed.