SANTA FÉ TIE & LUMBER PRESERVING CO. v. BURNS. (No. 7285.)

(Court of Civil Appeals of Texas. Galveston. Jan. 12, 1917. Rehearing Denied Feb. 8, 1917.)

1. MASTER AND SERVANT ☞276(2)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—CAUSE OF INJURY.

In a servant's action for injuries caused by falling of lumber from a car which plaintiff was unloading, evidence *held* to sustain a finding that the plaintiff was injured by the timbers from the car falling upon him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959.]

2. MASTER AND SERVANT ☞289(1)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain a finding that plaintiff was not negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1089.]

3. MASTER AND SERVANT ☞288(1)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain a finding that plaintiff did not assume the risk of such injuries.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068, 1069, 1087, 1088.]

4. CONTINUANCE ☞11 — GROUNDS—FAILURE TO SIGN DEPOSITION.

Where plaintiff testified at the trial and was not interrogated by the defendant in regard to a deposition, and no question was raised as to the accuracy of the copy of the deposition tendered after an announcement of "ready," and it is not shown that the failure of the defendant to obtain the deposition before the trial affected its preparedness to meet the case, refusal of the court to grant a motion for continuance on the ground of plaintiff's alleged failure and refusal to sign and swear to the deposition before trial, was not erroneous.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 19–24.]

5. MASTER AND SERVANT ☞286(13)—INJURIES TO SERVANT — NEGLIGENCE—QUESTION FOR JURY.

Whether defendant was negligent in failing to have stays placed on the side of the car of lumber before it was unloaded *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1020.]

6. MASTER AND SERVANT ☞111(1) — INJURY TO SERVANT—NEGLIGENCE—SAFE PLACE TO WORK.

If master was negligent in failing to replace stays on a car of lumber before directing a servant to unload the car, it failed to use the ordinary care required to provide a safe place for the performance of the work assigned to a servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215, 255.]

7. MASTER AND SERVANT ☞205(1) — INJURY TO SERVANT—NEGLIGENCE—DUTY TO DISCOVER DEFECTS.

It is the duty of the master to discover defects in the place at which and the appliances with which the servant is to work, and there is no duty of inspection placed upon the servant, but he can rely upon the assumption that the master has performed his duty, and is not required to use ordinary care to see whether this has been done or not.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 547.]

Appeal from District Court, Burleson County; Ed R. Sinks, Judge.

Action by Tom Burns against the Santa Fé Tie & Lumber Preserving Company and another. Judgment for plaintiff, and the named defendant appeals. Affirmed.

Hunt, Myer & Teagle, of Houston, for appellant. U. S. Hearrell, of Cameron, and W. M. Hilliard, of Caldwell, for appellee.

PLEASANTS, C. J. This suit was brought by the appellee against the appellant and the Gulf, Colorado & Santa Fé Railway Company to recover damages in the sum of $35,000 for personal injuries alleged to have been caused by the negligence of the defendants.

The petition alleges, in substance, that on November 13, 1914, plaintiff, who was at that time an employé of appellant, was engaged with other employés of appellant in unloading lumber from cars in appellant's yards and stacking or piling it along the side of the railroad track, and while so engaged was injured by timbers falling upon him from the car which was being unloaded.

The negligence charged against the railway was in "spotting" or placing the car in appellant's yard to be unloaded without having stays or standards on the side of the car to prevent the timbers from falling therefrom. The negligence charged against appellant was its failure to furnish plaintiff with a reasonably safe place in which to work and in the failure to warn plaintiff, who was inexperienced, of the danger of unloading the car in the condition in which it was when plaintiff was put at such work.

The appellant answered by a general demurrer and special exceptions, general denial and pleas of contributory negligence, assumed risk, and negligence of a fellow servant.

After the trial had begun plaintiff dismissed his suit against the railway company. The cause as between plaintiff and appellant was submitted to a jury upon special issues, and upon the return by the jury of their verdict judgment was rendered in favor of plaintiff for $10,000.

[1-3] In answer to questions propounded in the charge of the court the jury found that the plaintiff was injured by the timbers from the car falling upon him, as alleged in his petition, that the appellant was negligent in failing to have stays or standards placed upon the side of the car before attempting to have the timbers removed from the south to the north end of the car, and that such negligence was the proximate cause of plaintiff's injury. They also found against appel-

lant on its pleas of contributory negligence and assumed risk, and fixed the amount of plaintiff's damage at $10,000. The evidence is sufficient to sustain each and all of these findings.

The first assignment of error complains of the refusal of the court to grant a motion for a continuance made by appellant on the ground that plaintiff had failed and refused to sign and swear to depositions taken at the instance of appellant. The propositions presented under this assignment are as follows:

"A litigant is entitled to the testimony of the adverse party before trial of the cause. when he is diligent in attempting to procure same, and a tender of such deposition after an announcement of 'ready' is not sufficient," and "Plaintiff having refused to sign and swear to his deposition before the officer taking the same, thereby depriving the defendant of the benefits of a bill of discovery, the defendant was entitled to a continuance."

The sworn answer of plaintiff to the motion for continuance, which is uncontradicted, states:

That in obedience to a summons from T. J. Carter, notary public, he appeared before said officer on November 10, 1915, and made answer under oath to all of the questions propounded to him by appellant; that said answers were taken in shorthand by a stenographer employed by the appellant, and were afterwards transcribed; that before they were transcribed plaintiff's attorney had left Somerville, at which place the depositions were taken, and when they were presented to him by the notary for his signature, in view of the fact that he had made his answers before the officer under oath, he did not think he was required to sign and again swear thereto, and asked the officer to allow him to consult his attorney in regard to signing the depositions; "that he immediately went to the phone and called up his attorney and asked him whether or not he should sign said depositions, and upon being advised that he should do so immediately thereupon proceeded to advise the said T. J. Carter, notary public, that he would sign and subscribe under oath to said depositions, but the said T. J. Carter refused to permit him to sign same, advising him that he had already sent the papers in to the district court of Caldwell, Tex. Plaintiff says that he has always been willing and ready to sign said oral depositions, and has signed and subscribed to same, and now presents a copy of said depositions duly signed and sworn to by him, and attaches the same to this instrument filed herein, and makes the same a part hereof."

[4] The plaintiff testified on the trial and was not interrogated by the appellant in regard to his deposition. No question was raised as to the accuracy of the copy of the deposition tendered with the answer to the motion for rehearing, and there is nothing in the record upon which to base even a surmise or suspicion that the failure of appellant to obtain the depositions before the trial affected in the least its preparedness to meet the case made by the pleadings and evidence of plaintiff. The assignment is without merit, and must be overruled.

The second assignment complains of the refusal of the court to instruct the jury to return a verdict for the defendant. The proposition under this assignment is:

"When an unusual condition exists in the place an employé is to work in, or a change in the condition of a tool furnished, which is unusual or out of the ordinary rule, and the employé is thereby injured, he must allege and prove that the master knew of this condition, or could have known thereof by the exercise of ordinary care on his part."

We do not think this proposition has any application to the case made by the pleadings and evidence.

The pleadings and evidence show that appellant is engaged in the business of creosoting ties and timbers and that its employés number about 300, and it was agreed that at the time the accident occurred which caused plaintiff's injury appellant was not a subscriber to the Texas Insurance Association created by the Act of the Thirty-Third Legislature. There were 13 employés of appellant, including plaintiff, engaged in unloading and stacking the lumber from the car at the time of the accident. These employés were directed to unload the car by a foreman or boss who had supervision over the crew. The timbers with which the car was loaded were 8x8 inches in width and thickness and 12 feet in length. This car was a flat car, and when placed in the yard by the railroad company for unloading it had stays or standards on its sides to keep the timbers in place. These standards are fitted in sockets and extended above the timbers and are held together by crosspieces nailed to the top of the standards across the timbers. There were from 8 to 10 standards on each side of the car. When appellant's foreman directed plaintiff's coemployés to unload the car in question all of the standards had been taken from the car from which the timbers were to be unloaded. It does not appear from the evidence when or by whom the standards were removed. The foreman was present when the work of unloading began.

Cars loaded with timbers of this kind are unloaded one end at a time. The usual and safe method of unloading is to place skids 10 or 12 feet long, fastened on the ground at one end with the other end resting on the timbers just below the top layer. After the skids are placed the standards and crosspieces on that section or end of the car are removed. The skids keep the timbers from falling. When the top tier of timbers has been removed the skids are lowered and the next tier removed, and this process is continued until that end or section of the car is unloaded. The skids are then moved to the other section or end of the car and the same method followed in unloading it.

There was a pile of lumber near the south end of the car in question which prevented the use of the skids in unloading that end, and as the car could not be moved because of other cars on the track, it was necessary in order to unload the south end to move the timbers from that end to the north end so that the skids could be used in sliding them to the ground. After the north end of the

car had been unloaded plaintiff and other employés were told to get on the car and move the timbers from the south end to the north end. Plaintiff had not been engaged in taking the timbers from the north end of the car, but had been at work placing the timbers after they had reached the ground. When he was called upon to get on the car he went in between its south end and the pile of lumber before mentioned and reached up on the lumber to get a hook to use in moving the timbers on the car. Just as he did this the timbers from the car fell on him and caused the injuries for which he recovered. No one was on the car and no one had touched the timbers that fell on plaintiff. When the work of unloading the car began plaintiff was not present, having been sent on an errand by the foreman, but as soon as he returned the foreman directed him to assist in the unloading which he did, as before stated.

Plaintiff's statement as to the timbers falling on him and his knowledge of the condition of the car are as follows:

"Some fellows called for me and another man to get on south end to push the lumber to them on the north end where they could throw it off. I walked in there to get my hook, when I reached up some voice hollowed to me to look out, and I began to dodge ahead. I didn't have time to get out of the way. At that time I was engaged in the work required of me. I did not know how many pieces fell on me. Some of the boys said seven fell. I was rendered unconscious. I did not know whether the standard had been removed from that section or not, because I hadn't looked. I did not see the standards. Why I didn't see them was because I didn't look. I was busy to get to my hook to get on the end of the car to push the lumber down to the boys."

The testimony all shows that the absence of stays or standards would be seen by any one who looked at the car.

[5] We think this evidence clearly raised the issue of negligence on the part of appellant, which was the proximate cause of plaintiff's injury, and the trial court properly refused to instruct a verdict for the defendant.

[6] In addition to the general charge of negligence in failing to provide plaintiff with a reasonably safe place in which to work, the petition specially alleges that appellant was negligent in failing to replace the standards. It was the duty of appellant to use ordinary care to furnish plaintiff a reasonably safe place in which to perform his work, and if it was negligent in failing to replace the standards before it put plaintiff to work unloading the car, it failed to use ordinary care to provide a reasonably safe place for the performance of the work assigned to plaintiff; the undisputed evidence showing the danger of working on or by a car in this condition. Appellant's foreman who had supervision of the crew of employés who were engaged in unloading the car was at the car when the work of unloading began

under his orders, and, according to the undisputed evidence, if he had looked at the car, he must have observed the absence of the standards.

[7] Upon this evidence reasonable minds cannot differ in the conclusion that by the use of ordinary care the condition of the car could have been discovered by appellant's foreman before he ordered plaintiff to work thereon. It is the duty of the master to discover defects and dangers in the place at which and the appliances with which the servant is to work, and there is no duty of inspection placed upon the servant. He can rely upon the assumption that the master has performed his duty and is not required to use ordinary care to see whether this has been done or not. Bonnet v. Railway, 89 Tex. 72, 33 S. W. 334; Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508.

We think it unnecessary to discuss the remaining assignments of error. None of them, in our opinion, should be sustained.

The charge of the court sufficiently submitted the issues raised by the pleadings and evidence, and the special charges requested by the appellant were properly refused.

We think the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.