ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. H. R. HYNSON.

No. 1834.  Decided May 6, 1908.

**1.—Master and Servant—Assumed Risk—Unblocked Guard Rail.**

The fact that the guard rails of a railway were not blocked being obvious, an experienced switchman who had worked in its yards for seven months must be held to have assumed the risk of injury by getting his foot caught between the track and the guard rail while walking between moving cars in making a coupling.  (Pp. 546, 547.)

**2.—Same—Defect in Automatic Couplers—Choice of Method.**

The automatic coupler operated by a lever from outside the track failing to work, a switchman who, instead of having the cars stopped to enable him to use the lever on the opposite side, went between the moving cars to pull the pin by hand and was there injured by catching his foot in an unblocked guard rail assumed the risk arising from the bad order of the coupler which failed to work.  (Pp. 547, 548.)

**3.—Negligence—Causal Connection.**

A defect in appliances of the business can, not be considered as a ground of recovery by an injured servant in the absence of evidence that it contributed to cause the injury.  (P. 548.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Bowie County.

Hynson sued the railway company and appealed from a judgment

rendered for defendant in accordance with the peremptory instruction of the trial court. The judgment being reversed and the cause remanded, the defendant obtained writ of error on ground of its conflict with the rulings in the same case on a previous appeal. Hynson v. St. Louis S. W. Ry. Co., 86 S. W. Rep., 928.

*Glass, Estes & King,* for plaintiff in error.—The Court of Civil Appeals erred in holding that defendant in error did not assume the risk of the guard rails being unblocked; he having worked in the yards for more than seven months, knowing that they were unblocked, and being conclusively presumed to know that they were unblocked, and voluntarily continuing at his work, thereby assumed the risk, as a matter of law. Hynson v. St. Louis S. W. Ry. Co., 86 S. W. Rep., 928; Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 658; Texas & P. Ry. Co. v. Bradford, 66 Texas, 732; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 21; St. Louis, I. M. & S. Ry. Co. v. Davis, 15 S. W. Rep., 895; Southern Pac. Co. v. Seeley, 152 U. S., 145; Choctaw, O. & G. Ry. Co. v. McDade, 191 U. S., 66; Lindsay v. New York N. H. & H. R. Co., 112 Fed. Rep., 384; Texas & P. Ry. Co. v. Archibald, 170 U. S., 665; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Morris v. Duluth, S. S. & A. Ry. Co., 108 Fed. Rep., 747; Kilpatrick v. Choctaw, O. & G. Ry. Co., 121 Fed. Rep., 11; Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. Rep., 529; O'Neil v. Chicago, R. I. & P. Ry. Co., 60 L. R. A., 443; Missouri, K. & T. Ry. Co. v. Carter, 95 Texas, 461.

The Court of Civil Appeals erred in holding that defendant in error did not assume the risk of getting in between the cars to uncouple them, because the undisputed proof shows that he knew that the chain connecting the lifting lever with the pin of the automatic coupler was disconnected, and knew that the guard rails were unblocked, and knew that he was walking between the rails, in the direction of the guard rail where his foot was caught, and where he was injured. Crawford v. Houston & T. C. Ry. Co., 89 Texas, 89.

*W. P. McLean* and *Chas. S. Todd,* for defendant in error.—Leaving a guard rail unblocked where others are blocked may sustain a finding by a jury of negligence. Huhn v. Missouri Pac. Ry. Co., 92 Mo., 440; Hamilton v. Rich Hill Coal Co., 108 Mo., 364; Stoddard v. St. Louis, K. C. & N. Ry. Co., 65 Mo., 514; Sherman v. Chicago & M. Ry. Co., 34 Minn., 259; Austin v. Chicago, R. I. & P. Ry. Co., 93 Iowa, 236; Seley v. Southern Pac. Ry. Co., 6 Utah, 319; Patterson v. Pittsburg & C. Ry. Co., 76 Pa. St., 389; Missouri Pac. Ry. Co. v. Baxter, 42 Neb., 793.

Assumed risk vel non is ordinarily a question of fact for the jury. In this case even if plaintiff assumed the risk of the unblocked guard rail (which is not conceded), he did not assume the risk of the master's negligence in furnishing a defective car, and the master's failure of inspection. Peck v. Peck, 99 Texas, 10; Missouri, K. & T. Ry. Co. v. Hannig and other cases cited, *supra.*

Going between slowly moving cars to uncouple them was not in this case contributory negligence as a matter of law, even though

there was a rule of the company against it. In this case no such rule was shown. Plaintiff testified that he knew of no such rule. Texas Cent. Ry. Co. v. Bender, 32 Texas Civ. App., 568; Gulf, C. & S. F. Ry. Co. v. Cornell, 29 Texas Civ. App., 596; Missouri, K. & T. Ry. Co. v. Mayfield, 29 Texas Civ. App., 477; Missouri, K. & T. Ry. Co. v. Milam, 20 Texas Civ. App., 688; International & G. N. Ry. Co. v. Gourley, 21 Texas Civ. App., 579; St. Louis, S. F. Ry. Co. v. Ames, 16 Texas Ct. Rep., 299.

We submit that this is essentially a case of disputed facts for a jury. We respectfully refer to the following recent cases on directing a verdict. Bonn v. Galveston, H. & S. A. Ry. Co., 11 Texas Ct. Rep., 237, 82 S. W. Rep., 808; Galveston, H. & S. A. Ry. Co. v. Cherry, 17 Texas Ct. Rep., 505; Texas & Mex. Ry. Co. v. Higgins, 17 Texas Ct. Rep., 685, 686.

Mr. Justice Brown delivered the opinion of the court.

Plaintiff in error had and maintained at Texarkana, Texas, a yard in which there were a large number of tracks and switches, on which tracks it stored cars and moved them from one point to another and by means of the switches it shifted them from one track to another. At each switch there were two guard rails which were placed on the inside of the main rails of the track and at a distance of two and one-half inches from the main rails, except that each end the guard rails were bent towards the center of the track so that the end of the guard rails would be five to seven inches from the main rails. The purpose of the guard rails was to guide the wheels of the cars which were being switched from one track to another so as to place them on the desired track. In this yard there were thirty-five or more switches and somewhere between seventy-five and one hundred guard rails. Some railroad companies blocked the guard rails, that is, a block of wood was driven in between the end of the guard rails and the main rails in the V shape space and adjusted in such way as to allow the flanges of the wheels on the car to pass over them and at the same time to prevent the foot of any person engaged in the work there from slipping between the two rails. Some of the most important railroads in the country, and perhaps a majority of all the roads, do not use blocks and regard them as more dangerous than to have the guard rails unblocked. The plaintiff in error did not use the blocks in the guard rails, neither did the Texas & Pacific Railroad with which it was connected at Texarkana. The guard rails in this yard, except a few, perhaps three or four, were unblocked. The absence of the block was so palpable that the plaintiff himself testified that it could be seen at a glance. There was nothing complicated about it to prevent one from understanding it if he observed it at all.

Hynson had been engaged in running on different roads as a brakeman and had been acting as a switchman in the yard for about seven years and had worked in such yards both at day and night time. He had been engaged at work in this yard as brakeman and switchman for about seven months, working from 7 p. m. to

7 a. m. each night. Hynson testified that he had never noticed whether the guard rails in the yard were blocked or not until after he was injured; that he never thought about it, and that if he had looked at it he would necessarily have seen that they were not blocked. The evidence showed that there was one block near the passenger depot and two blocks in the guard rails at a point near to the place where the injury occurred. Hynson had seen the block near the depot because he passed over it every day, but he had not noticed the block down near to where he was injured at all, nor any of the blocks in any other part of the yard.

At the time of receiving his injury Hynson was engaged as a brakeman in switching a car from a track in the yards of the plaintiff in error to the connecting track of the Texas & Pacific railroad. He had just passed over the switch where the guard rails were and was about forty feet from the end of the guard rails when it was started back so as to be placed on the connecting track of the Texas & Pacific. He knew that the switch was there and that the guard rails were there. He received the signal to uncouple the car and attempted to do so by the use of the handle provided for uncoupling the cars without going between them, but the instrument failed to work for some reason, and he stepped between the cars to pull the pin out and was walking along the track when his foot was caught in the guard rail and while hanging on to the car was dragged until his foot was pulled out between the rails and badly injured.

At the trial the district judge instructed the jury to return a verdict for the defendant which was done and judgment entered accordingly. The Court of Civil Appeals reversed this judgment and remanded the case for a new trial. This writ of error was granted because the decision of the Court of Civil Appeals in this case was in conflict with the decision of the Court of Civil Appeals of the Fifth District in the same case on a former trial, upon the question that as a matter of law Hynson assumed the risk of the unblocked condition of the guard rails in the yard and therefore could not recover for his injury.

The decisions of this court have established the law to be that "the servant owes no duty of inspection. He assumes the risks of a danger of which he has actual knowledge, and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment: Since, in the absence of knowledge to the contrary, he may rely upon the assumption that the master will do his duty, he is under no obligation to look out for the master's negligence; but he can not shut his eyes to dangers that are obvious to an ordinary man, or to an experienced man if he be experienced." (Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 76.) Hynson was an experienced man in the work in which he was engaged, therefore, must be held in law to have known what he would have discovered in the exercise of "that circumspection that a prudent man would use in the particular employment." The danger consisted in the failure of the railroad company to block the guard rails in its yard, which was obvious to a casual observation of the guard rail, and if Hynson

had looked at it he would have seen that it was unblocked and would have known that there was danger of getting his foot caught if he walked over it. His own testimony shows that he did not think of the condition of the guard rail, nor look to see if it was blocked. His failure to exercise the diligence of thinking about his work and about the dangers that he was encountering can not excuse him from the liability of having assumed the risk of the defect which existed in the guard rails. As stated in the quotation above, one who is engaged in a dangerous service of this kind can not "shut his eyes" to those things that would be obvious to a man who is ordinarily vigilant in protecting himself from injury. It would be impossible for the railroad company to guard a man against dangers who neither thought of nor looked when he was in the presence of danger; nobody could think for Hynson except himself. We conclude that Hynson assumed the risk of injury in performing his service in this yard. If the railroad company was negligent in not blocking the guard rails, still the risk of damage was assumed by Hynson and he can not recover on that account.

The negligence of the railroad company in failing to properly inspect and keep the automatic coupler in a reasonable condition for use constitutes no answer to the defense that the plaintiff assumed the risk of danger from the unblocked guard rails. (Denver & R. G. Ry. Co. v. Norgate, 6 L. R. A. (New Series), 981, 141 Fed. Rep., 247; St. Louis Cordage Co. v. Miller, 63 L. R. A., 551, 126 Fed. Rep., 495; Knisley v. Pratt, 32 L. R. A., 367, 148 N. Y., 372.) In the case last cited the court said: "In order to sustain the judgment in favor of the plaintiff it is necessary to hold that where the statute imposes a duty upon the employer the performance of which will afford greater protection to the employe, it is not possible for the latter to waive the protection of the statute, under the common law doctrine of obvious risk. We regard this as a new and startling doctrine, calculated to establish a measure of liability unknown to the common law, and which is contrary to the decisions of Massachusetts and England under similar statutes." In the case from which we have quoted there was a failure to comply with a requirement that certain parts of a machine should be protected to guard the employes against injury. The facts of the case showed that the injured employe came within the rule of assumed risk and the court in that case held that the failure to comply with the requirements of the law on the part of the railroad company did not answer the defense of assumed risk in that case.

Hynson's testimony shows that he controlled the movement of the cars by signals given to the engineer; he could have stopped the cars at any time he desired to do so. There were five cars attached to the engine, the rear car being the one which he was to uncouple. The cars were moving slowly, about as fast as a man could walk. The car to be cut off had a coupler on the opposite side from that on which Hynson was. When Hynson pulled the lever of the coupler in the attempt to uncouple the car, he was outside of the railroad track. Failing to lift the pin with the coupler, Hynson, still outside the rails, reached in and tried to pull the pin out, but it was fastened

so that he could not remove it. Instead of giving the signal to stop the cars until he could go on the opposite side and use the coupler as he might have done, with full knowledge of the defect of the coupler which he had tried to use and of the fact that the pin was fast, Hynson stepped in between the cars and walked between the rails trying to remove the pin. Of the two ways in which he might have performed his service, one safe and the other hazardous, he chose that which was dangerous, from which choice his injury resulted. In making this choice he assumed the risk of injury which might result from the performance of his work in the way he had chosen. (Railway v. Mathis, decided by this court at the present term; 1 Labatt, Master and Servant, sec. 258; International & G. N. R. R. Co. v. McCarthy, 64 Texas, 632; Crawford v. Houston & T. C. R. R. Co., 89 Texas, 89.) The case last cited is closely analogous to this in its facts. In that case this court held that Crawford had assumed the risk of the manner of performing the work and was not entitled to recover. There is no evidence to show that Hynson's injury was caused or contributed to by the fact that the end of the guard rail was two inches too far from the main rail, therefore, the defect, if it did exist, furnishes no ground of recovery. Since Hynson assumed the risk of the unblocked guard rail, and also the risk of all injuries which might result to him from the defect in the coupler and the manner in which he chose to do the work, it is evident that he can not recover in another trial. It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*