### DALLAS GAS CO. v. PATTON.†

(Court of Civil Appeals of Texas. Dallas. April 27, 1912. Rehearing Denied May 11, 1912.)

MASTER AND SERVANT (§ 217*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A servant was injured by falling through a hole in the floor of the stoking room of a gas manufacturing plant by slipping on cinders. He was familiar with the room, knew of the hole and cinders. There were several safe ways for him to use, but he chose the dangerous way. There was nothing to prevent his seeing that the path which he used was obliterated by cinders. *Held*, that he assumed as a matter of law the risk of falling into the hole.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by Will D. Patton against the Dallas Gas Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Burgess & Burgess, Cockrell, Gray & Thomas, and W. J. J. Smith, all of Dallas, for appellant. Geo. W. Donalson and Wood & Wood, all of Dallas, for appellee.

RAINEY, C. J. Appellee instituted this suit against appellant to recover damages for personal injuries alleged to have been received by him while in the employ of appellant by falling through a hole in the floor of the stoking room of appellant's plant. Appellant answered by general demurrer, general denial, assumed risk, and contributory negligence. A trial before a jury resulted in a verdict and judgment in favor of plaintiff for $6,000, and defendant appeals. Appellant complains of the court for refusing to instruct a verdict for defendant, as requested.

The evidence shows that appellant was manufacturing gas in the city of Dallas. The plant building was about 200 feet long and 40 feet wide. Its long way was north and south. It was a one-story building, but had a basement underneath, which was an excavation in the ground. The main floor of the building was on a level with the top of the ground. The building was cut up into several rooms by partition walls, running east and west, entirely across the building. The north room was the boiler room. The room immediately south of it was the stoking room, in which appellee was injured, and it was about 60 feet long, north and south, and about 40 feet wide, east and west. In the southwest corner of the stoking room there was a space about 10 feet square, which was not floored, which created a hole of that size over the basement. This hole is bounded on its south, west, and north sides by solid walls, so that it is completely surrounded by solid walls, except on its east side, which is about 19 feet from the east wall of the building. The hole 10 feet square has a solid brick arch above it. The east edge of the hole is not a straight line. In its middle it projects into the floor about 2 feet. This projection is about 4 feet wide north and south and 2 feet east and west. This projection is called the recess. On the south side of the main hole next to the south wall is a stairway down into the basement. It starts down into the basement from the east edge of the main hole, against the south wall of the empty bench hole, and runs down this wall west to the basement floor. This opening, including the recess, is called an empty "bench hole." It was placed there and walled and arched over, originally for the purpose of putting in it a retort, such as lie north of it. The depth of the basement is 8 or 9 feet. The stairway in the open bench hole was put there that employés might go down it into the basement from the stoking room, had been there more than a year when appellee was hurt, and it was frequently used by the employés to go down into the basement. There were no doors or windows in the west wall of the stoking room. At the north end of the stoking room there was the boiler room, and a wall between it and the stoking room, so that no direct light could enter the stoking room from the north. There were several rooms and partition walls to the south of the stoking room, and no direct light could reach the stoking room from the south. The main opening down through which the stairway went was completely inclosed on three sides by solid brick walls which extended up near the roof of the building and above by a solid brick arch. The east edge of the hole was about 17 feet from the east wall of the building. In this east wall were four large doors with transoms above them. At the time appellee fell into the recess hole there was piled in front of it to its east, and between it and said doors in said east wall, cinders and ashes 4 or 5 feet high, and they reached back to the south

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

wall. There was a ventilator in the roof of the building over the stoking room. The lower edge of it is 28 feet above the floor of the stoking room. This ventilator stood perpendicular, and did not present its full opening to the floor of the stoking room. It was put there to let out fumes and smoke. M. N. Dial had his office in the meter room in the main building and was there every day. He did not do any physical labor around there. His only business was to superintend others. He had charge of the stairway leading from the stoking room down into the basement, and changed it from a ladder to stairsteps. Dial had personal supervision over the entire plant and all the employés, including appellee. The ashes and cinders had been thrown up from the basement through the recess hole for some months before appellee got hurt, and removed from the stoking room and taken away. This was all done under the direction of Dial. Dial would go down into the basement once or twice each day to see about the disposition of the cinders. Dial knew the cinders and ashes were thrown up through the hole and permitted them to remain and accumulate there. The ashes and cinders that were thrown up through the hole were moved away daily, and were not allowed to accumulate about the hole or the stairway until just a short time before appellee was hurt. They were then and had been for several days permitted to accumulate in front of the stairway and about the hole under the direction of Dial. Appellee had not been in the stoking room, nor about the stairway or hole for six weeks immediately preceding the 28th day of June, the day before he got hurt. Appellee had been back at work after his lay-off for eight days, but had worked on the new building. During the appellee's six weeks' absence from the stoking room, and not before, Superintendent Dial had directed the accumulation of the cinders in the stoking room about the hole and stairway, that they might be used for concrete purposes. On the 28th day of June, 1909, in the afternoon, the cinders and ashes had accumulated until they were about 4 or 5 feet high in front of the stairway and recess hole, extending from the north edge of the recess hole south to the wall south of the stoking room in front of the stairway, cutting off the usual approach to the top of the stairway, but leaving a pathway about 18 inches wide between the cinders and recess hole which was on that evening a reasonably safe way. On the said afternoon of the 28th of June said Dial called on appellee where he was at work on the new building, and directed him to get his tools and do some gas fittings in the basement of the old building. Appellee followed Dial, and they went through the stoking room along the way by the recess hole, Dial in front, and to the top of the stairway, and thence down the

stairway to the basement, where Dial showed him what to do. The appellee quit work in the basement at 6 o'clock that evening without finishing the job, and went up the stairway and along the path by the recess hole and out the way he and Dial came in. That night, as usual, there were cinders thrown up from the basement through the recess hole on the stoking room floor which obliterated the path through the cinders that existed the evening before. The next morning the appellee did his engine work and some other work, and about 11 o'clock he got two wrenches and a piece of pipe, all weighing about 12 or 14 pounds, and went into the stoking room on his way to the basement, to finish the job he had started the evening before. When he entered the stoking room the four large doors on the east were open, through which the light entered, and with the light from the ventilator above the stoking room was sufficiently lighted for the pile of cinders to be seen. The hole could not be seen from the door for the reason of the pile of cinders. He was perfectly familiar with the position of the hole. To reach the stairway it was necessary to avoid going over a four or five foot pile of cinders to partially circle around, which brought him just north of the recess hole where some cinders and ashes had collected. He stepped on these cinders, and, as he attempted to step across the recess hole, his foot slipped, and he fell through the hole into the basement, and was injured. There were several safe ways to reach the basement from the outside besides the one through the stoking room. M. N. Dial was superintendent of the plant, had control of all the employés, and had his office in the stoking room, and had been in there that morning before the accident. Appellee had been in the employ of appellant for several years, was foreman under Dial until about six weeks before the accident, when he had to lay off for sickness. When he returned to work about eight days before he was hurt, he was placed on some outside work, and had not been working in the stoking room. Before he got sick, it was the custom to throw up at night from the basement cinders and ashes through the recess hole, which were frequently removed the next morning, but by order of Dial they had been allowed to accumulate in the stoking room for four or five days, and were in that condition when he got hurt.

We are of the opinion that, under the circumstances of this case, the appellee was not entitled to recover, and the court erred in not giving a peremptory instruction for the defendant, as requested. The testimony of appellee conclusively shows that he was perfectly familiar with the construction of the stoking room, knew of the recess hole, having worked around it, and used the stairsteps which led down into the basement frequently. He had worked in the stoking

room as foreman for a long time, and was of necessity familiar with it. He attempts to excuse his conduct on the morning of his injury by showing that on the evening before that there was a path through the cinders to the head of the stair steps along which he and Dial walked in going to the basement the evening before, but the morning he was injured when he entered the stoking room it was light, and there was nothing to prevent his seeing that the path of the evening before had been obliterated by cinders and ashes that had been thrown there during the night which had changed the conditions in that respect. He testifies that he was paying no attention, and that, had he looked, he could have seen the cinders and ashes on which he slipped. He knew he was close to the hole or ought to have known it, and pursuing his way without using any care whatever he assumed the risk of falling into the hole, and the appellant is not liable for his injuries.

It was the duty of appellant to use ordinary care to furnish appellee a reasonably safe place to work, but we are not prepared to say that it was negligent in this instance, as it had furnished other and safe ways for passage to the basement that appellee could have used. It had the right to allow cinders to accumulate in the stoking room, and, while appellee had the right to assume the master had provided a safe place to work and he was not called upon to make an inspection to ascertain that the master had done his duty, yet he could not shut his eyes to dangers that were obvious to an ordinary man, or to an experienced man, if he was experienced. Railway Co. v. Hynson, 101 Tex. 543, 109 S. W. 929; Bonnet v. Railway Co., 89 Tex. 76, 33 S. W. 334.

The danger in pursuing that route was as open and obvious to appellee as to appellant, as by a glance he could have seen, if he did not know, how the ashes and cinders were piled. If he was reckless and did not use his senses, he must take the consequences.

The judgment of the lower court is reversed, and judgment here rendered for appellant.