## WORDEN v. KROEGER.    (No. 503.)*

(Court of Civil Appeals of Texas. El Paso. Jan. 27, 1916. On Rehearing, March 23, 1916.)

1. TRIAL ⬅➡348—INSTRUCTIONS—SUBMISSION OF SPECIAL ISSUES.

Where the case is submitted upon special issues, it is improper to submit a special charge calling for a general verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 822, 823, 827; Dec. Dig. ⬅➡348.]

2. MASTER AND SERVANT ⬅➡217(1), 235(7)— DUTY OF SERVANT—INSPECTION.

A servant assumes no duty of inspection of the tools he uses, assuming only the risk of a danger of which he has actual knowledge and of hazards of which he might learn by exercise of that ordinary circumspection which a prudent man uses since he may rely upon the assumption that the master will do his duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574, 714; Dec. Dig. ⬅➡ 217(1), 235(7).]

3. MASTER AND SERVANT ⬅➡217(25)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A carpenter who used a sawing machine without a cut-off guide, knowing its purpose, and that it was dangerous to operate without one, as he testified, "taking a chance," assumed the risk of injury when so performing the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 593, 594; Dec. Dig. ⬅➡ 217(25).]

4. APPEAL AND ERROR ⬅➡1170(9) — DISPOSITION—IMMATERIAL ERROR.

Under rule 62a of the Court of Civil Appeals (149 S. W. x), providing that judgment shall not be reversed for error which did not result in the rendition of an improper judgment, in a servant's action for injuries, where it was apparent from his own testimony that he assumed the risk, error in submitting a special charge calling for a general verdict, where the case was submitted upon special issues, was not cause for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4066, 4543; Dec. Dig. ⬅➡ 1170(9).]

### On Rehearing.

5. MASTER AND SERVANT ⬅➡276(4)—INJURY TO SERVANT — PROXIMATE CAUSE — SUFFICIENCY OF EVIDENCE.

In a carpenter's action for injuries while operating a mechanical saw, evidence *held* insufficient to prove that the rough table top caused or contributed to cause the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ⬅➡ 276(4).]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Suit by Frank Lull Worden against Otto P. Kroeger. From a judgment for defendant, plaintiff appeals. Affirmed.

Jones, Jones & Hardie, of El Paso, for appellant. A. R. Grambling and John L. Dyer, both of El Paso, for appellee.

HARPER, C. J. Appellant brought this suit against appellee for $20,000 damages for the loss of a portion of his thumb and fingers, in substance based upon the following allegations: That appellee was a contractor, and was engaged in the construction of a build-ing in El Paso; that appellant was employed as a helper about said work; that in the work a machine was owned and operated by appellee in sawing lumber; that to operate said machine was not within the scope of appellant's employment; that one Wilson, being the vice principal and foreman, ordered appellant to operate said machine; that he objected to doing so, for the reason that it was not his work, and that he did not understand the machine and the manner of its operation, but said foreman insisted and compelled him to do so; that the said machine was unsafe, unfit, and defective for the purposes for which it was being used; that appellant was an inexperienced man, unacquainted with the dangers incident to the operation of the machine all of which appellee and his foreman knew, and failed to instruct the appellant as to the proper mode of operating the machine or to caution him as to the dangers; that while attempting to operate the said machine by reason of the defects therein his hand was thrown against the saw and four of his fingers cut off.

Appellee answered that appellant was in his employ as a carpenter to do whatever was necessary in connection with the construction of the building, and not as helper to perform ordinary labor; denied that Wilson was vice principal; denied that appellant was commanded to operate the machine, but was only directed to work it in the usual and customary way; further alleged that appellant was an able carpenter and understood said machine, its defects and dangers, if any existed, or could have known thereof by the exercise of ordinary care; that the injuries to plaintiff and the cause thereof were such as arose in the course of the use and adjustment of the machine and incident thereto, and he therefore assumed the risks; that the injuries were caused by appellant's own negligence by reason of the manner in which he elected to perform the work, and it was the proximate cause thereof.

The cause was submitted to a jury upon special issues. Verdict and judgment for defendant, appellee, from which this appeal is taken.

The appellant's seven assignments and propositions thereunder charge error in certain special charges upon negligence and assumed risk; the points being that, the trial court having submitted the cause by special issues fully and correctly, it was error to submit a special charge at the request of defendant upon the same questions, because giving of the additional charges overemphasized defendant's theory of the case, and, further, because where a case is submitted upon special issues, it is inappropriate to give a special charge calling for a general verdict. The defenses pleaded were contributory negligence upon the part of the plaintiff and that under the facts he assumed the risk.

In the explanatory portion of the charge is a definition of what constitutes negligence upon the part of plaintiff, and the following issues were submitted:

"No. 13. Do you find from the evidence that the plaintiff was guilty of contributory negligence in operating the machine at the time of his injury without a cut-off guide?

"If you have answered question No. 13 in the affirmative, then, but not otherwise, the court submits to you this additional question:

"No. 14. Do you find that such contributory negligence, if any, upon the part of plaintiff, was the proximate cause or one of the proximate causes of his injury?"

In addition to the above questions, at the request of defendant, the court gave the following special charge:

"You are charged that, if you believe from the evidence in this case that the plaintiff had the capacity and opportunity to know and appreciate the dangers in reference to using the machine without a cut-off guide, and if you believe by the exercise of that ordinary circumspection that an ordinarily prudent person would have used in the same circumstances he would have known of the dangers in reference to using the machine without a cut-off guide, and he remained in the service of the defendant and used the machine without a cut-off guide, and was injured by reason thereof, and that the same was dangerous, as a matter of law, he assumed the risk, and would not be entitled to recover, and, so believing, you must return verdict in favor of the defendant on the issues submitted to you by the court in reference thereto."

And similar special charges were given for the defendant upon the issue of assumed risk, and the record shows other similar charges to the ones copied above upon the defensive issue of contributory negligence.

[1] It is improper to submit a special charge calling for a general verdict where the case is submitted upon special issues. H. & T. C. Ry. Co. v. Kincheloe, 56 Tex. Civ. App. 123, 119 S. W. 905; Moore v. Pierson, 100 Tex. 114, 94 S. W. 1132, Id., 93 S. W. 1007. And the writer is of the opinion that the additional special charges with those in the original charge makes the charge subject to the criticism that it gave undue prominence to the issues mentioned, and, if there was any material conflict in the evidence adduced upon the issues of assumed risk and contributory negligence, it would constitute reversible error. The other members of the court express no opinion in this respect, for the reason that we all agree that under the facts in this case the cause must be affirmed, because he admits that he knew of the defects in the table and the machine he was operating, and realized the dangers attendant upon its operation in the condition it was; therefore assumed the risk.

Appellee was contractor for and had under construction a building in El Paso. In this work there was in use a circular saw which was placed upon a table and there run by a machine. The machine was provided with a cut-off guide; that is, an appliance which, when attached to the machine, guides the lumber being sawed so that the saw may pass accurately and safely through it. The evidence shows that the lumber that is being sawed may be guided with the hands without a cut-off guide, but all the witnesses testify that it is not a safe way to do the work.

The negligence charged in this case is that appellant was an inexperienced man in the operation of a saw; that the top of the table upon which the saw was placed and along which the lumber being sawed moved was rough and uneven; that the machine which operated the saw was not equipped at the time of the accident with a cut-off guide; that because of the condition of the table top and the absence of the cut-off guide it was dangerous to operate the machine; that appellant did not know of nor realize the danger in operating the machine with the table top in the condition it then was without a cut-off guide, and with his hands.

Appellant testified:

"I am 51 years old. The table top when I went there to my actual knowledge had been in use five or six months. It was worn, and I remember seeing both Mr. Cain and Mr. Marti take slivers off the top of it. I should judge I worked for Mr. Kroeger from the latter part of July until the third week in December. I worked down there where they were building the Little Caples Building possibly three weeks. They had a machine down there something similar to this. There was no change made in the machine after Mr. Marti quit. There was no change made in the machine when Mr. Cain quit. I don't know the last name of the man who used the saw when they were building the Little Caples Building. I worked with him as a helper. He used the guide. I saw him use the guide. I knew he used the guide. I saw him use it all the time. I saw Mr. Cain use the guide. I saw Mr. Marti use the guide when he was working on it. I saw every other man who worked on it use the guide. No; I was not the only one who used the saw after Marti quit. If a carpenter would come along and want a piece of material he would cut it out himself, if they wanted a number of pieces they would generally call me. I used that saw off and on three weeks before I was hurt. I was doing the principal sawing. If carpenters around the building wanted things they would go to Mr. Wilson and tell him what they wanted, and Mr. Wilson would send the man to me, tell me what was wanted, and I would cut it out for them; I sawed it off. I used that saw for three or four weeks before I was hurt. I had seen other men use the guide. I used a guide in ripping. The principal part of my work has been ripping work. For three weeks before I was hurt I had been sawing both blocks and ripping. I had seen the men at the Little Caples Building cutting blocks. I did the principal sawing. I sawed blocks and ripped. I did that for three weeks before I was hurt. I was working on and off at the machine for three or four weeks before I was hurt. I had seen the other man use the guide. There was no guide there, and furthermore than that I had only 20, 30, or 40 blocks to cut. I had seen these other men take chances on cutting their blocks. I thought I would take a chance. When I had a few blocks to saw I took the chance, and when I took the chance I got hurt. I knew the guide was the safe way to handle the machine. In preference to getting fired, I preferred to do something that was dangerous. Instead of taking the time and telling him there was no guide, I took the chance and used it without the guide. I knew that the table was rough. I worked on the machine with it that way with that knowledge.

When I took the chance I got hurt. I believe that I mentioned the fact that there was no guide to Mr. Wilson. It had been thrown into the scrap. When I mentioned it to him, it was his duty as a foreman to have one made, but I worked on the machine knowing that he had not provided one. When I could saw diagonally or crosswise, I sawed without a guide. I knew the top was rough. I saw it did not have a guide on it. I knew there was danger connected with it. Instead of quitting work I went ahead and worked on it. I guess the guide was down by the machine when Mr. Cain sawed off stuff without it. Every time I saw Mr. Marti do any cut-off work he was using the guide. If he was not using it, it was down by the side of the machine. I probably used the guide up to the time that the machine was moved from the front part of the building to the rear part, when the guide was taken off and thrown out in the scrap. I had seen them use the guide, and had seen them cut off without the guide. I appreciated the necessity of using it. I thought I could use the machine with safety without the guide. I did not know it; I thought it. I preferred to take the chance."

[2] The law in this state is established to be that:

"The servant owes no duty of inspection. He assumes the risk of a danger of which he has actual knowledge, and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment. Since, in the absence of knowledge to the contrary, he may rely upon the assumption that the master will do his duty, he is under no obligation to look out for the master's negligence; but he cannot shut his eyes to dangers that are obvious to an ordinary man, or to an experienced man if he be experienced." St. L. S. Ry. Co. v. Hynson, 101 Tex. 543, 109 S. W. 929.

[3] Appellant's own testimony shows that he knew the machine had no cut-off guide, knew the purpose of one, and also that it was dangerous to operate the saw without one; so it must be held that he assumed the risk of injury in performing the work as he did. If appellee was negligent in failing to keep a cut-off guide handy to the machine, still the risk of damage was assumed by Worden, and he cannot recover on that account. Furthermore, plaintiff admitted that a guide was the safe way to operate the machine, and, instead of taking the time to tell appellee of the absence of the guide, he says:

"In preference to running the risk of being fired, I took the chance of doing it the dangerous way, and got hurt."

In making this choice he assumed the risk of injury which might result from the performance of his work in the way he had chosen. Of the two ways in which he might have performed his work, one safe and the other hazardous, he chose that which was dangerous from which choice his injury resulted. Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530; Labatt, Master & Servant, vol. 1, § 258.

[4] From the testimony of appellant, as well as that of the other witnesses, it is apparent that no other judgment should have been entered. Rule 62a (149 S. W. x).

Affirmed.

## On Rehearing.

Appellant, by motion for rehearing, urges with much earnestness that there is sufficient evidence in the record to require the court to submit the question of whether Worden realized the dangers in operating the saw without the cut-off guide with the table top rough and worn. We have again carefully considered the evidence, and are confirmed in our opinion that:

"Appellant knew of the defects in the table and the machine he was operating thereon, and realized the dangers attendant upon its operation in the condition it was without the guide."

[5] But, if we should be wrong in this conclusion, we find no evidence in the record which tends to prove that the rough table top caused or contributed to cause the injury. The only testimony in the record describing the cause of plaintiff's hand coming in contact with the saw is the following:

"I was working on the roof of the building the day I was hurt, helping to move the terra cotta from the seventh floor to the roof, and Mr. Wilson sent a man up from the ground floor to tell me to come down and cut some wedges. I went down and went out to the scrap pile, got some stuff, about 2x6 stuff of different lengths, took it into the rear of the saw, took the nails out of it, and then, if I remember right, after I had the nails all out of it, I went and got a square and marked the piece across the square—that is so I would get the 6-inch lengths—and then started my machine, pulled the switch, and I had sawed about 20 blocks 6 inches long, shoving through this way; the last block that I sawed, shoving through this way, something caught the block, but turned it into the saw and drove my hand in here. That was about 3:30 in the afternoon, or something like that. I know I got hurt on the saw, but exactly how it would be impossible to say, because it was done so quickly that I can't explain. I couldn't make a positive oath as to exactly what caused me to cut my hand."

In the absence of proof of the exact negligence charged, there can be no recovery. The motion is therefore overruled.